In the Matter of WASHINGTON COUNTY CEASE, INC., et al., Respondents, v RICHARD A. PERSICO et al., Constituting the Industrial Hazardous Waste Facility Siting Board, et al., Appellants.

Third Department, March 8, 1984

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Francis J. Keehan, Peter H. Schiff* and *James A. Sevinsky* of counsel), for appellants.

*Miller, Mannix, Lemery & Kafin, P. C. (Joseph Walsh* of counsel), for respondents.

**OPINION OF THE COURT**

WEISS, J.

In October, 1980, Congress amended the Federal Clean Water Act (US Code, tit 33, § 1251 *et seq.*) to provide for, *inter alia,* the Hudson River PCB Reclamation Demonstration Project (US Code, tit 33, § 1266). Pursuant to this legislation, the State of New York was designated to receive Federal funds for purposes of conducting a project of selective removal of the toxic chemical polychlorinated biphenyls (PCBs) from the Hudson River. Simply stated, the project anticipates the removal of dredged materials containing PCBs from a portion of the Hudson River bed (between Lock Two of the Champlain Canal and the Village of Fort Edward) and placing these materials within a secure landfill in the Town of Fort Edward, Washington County. The stated purpose behind the project is to deter-

mine "the feasibility of indefinite storage in secure landfills of toxic substances and of ascertaining the improvement of the rate of recovery of a toxic contaminated national waterway" (US Code, tit 33, § 1266, subd [a]). Before the commitment of Federal funds is finalized, a threshold showing is required that the proposed project provides a higher standard of protection of the public health, safety and welfare than other disposal alternatives. Approval for the project must be obtained from, among others, the newly created Industrial Hazardous Waste Facility Siting Board mechanism (ECL art 27, tit 11; L 1978, ch 639, § 12) and the Department of Environmental Conservation (DEC).

By application dated February 5, 1981, the Division of Water of DEC applied for a certificate of environmental safety and public necessity (certificate) (ECL 27-1105, subd 1). The proposed containment area for the PCB dredge spoils, designated as "Site 10", is approximately 250 acres in size, located approximately 2.5 miles south of the Village of Fort Edward in an area adjacent to the Hudson River within the Washington County Agriculture District No. 27, and is surrounded by numerous dairy farm operations. The site has been continuously zoned since 1963 as "agricultural-residential". In August, 1981, then Governor Hugh Carey appointed a facility siting board (board) to review the application and conduct adjudicatory hearings (ECL 27-1105, subd 2, par [d]). Robert Persico, General Counsel and Deputy Commissioner of DEC, was designated by the Commissioner of DEC as his representative, and served as board chairman (see ECL 27-1105, subd 2, par [d]). At a prehearing conference conducted September 24, 1981, petitioner Washington County Cease, Inc. (Cease), a nonprofit corporation incorporated in New York in 1981, was granted full party status. A significant number of the 200 Cease members own and operate dairy farms in the immediate vicinity of Site 10.

For purposes of simplicity, the board and DEC agreed to hold a combined hearing on the application. A series of public hearings were conducted from October 1, 1981 intermittently through January 21, 1982, during which the applicant and petitioner called various witnesses. On April 22, 1982, the board issued its decision approving the site

and granting the certificate. Thereafter, on May 17, 1982, the Commissioner of DEC, through his designee, Irwin King, granted the required DEC approvals and permits for the project. This CPLR article 78 proceeding was commenced on August 20, 1982 by Cease, and David and Merrilyn Pulver, owners of a dairy farm near Site 10, requesting judgment annulling the determination of both the board and DEC on the grounds that the hearings were in violation of lawful procedure, and that the decision was affected by an error of law and was arbitrary and capricious (CPLR 7803, subd 3). By judgment entered August 11, 1983, Special Term granted the petition and annulled the determinations of both the board and DEC (120 Misc 2d 207). This appeal ensued.

█ There should be an affirmance. A fundamental issue on this appeal is whether the State is subject to local zoning regulations under ECL article 27 (tit 11). On January 7, 1982, Cease moved for summary denial of the pending application on the ground that the applicant had failed to comply with the Town of Fort Edward's local zoning ordinance. The board denied the motion, finding that as an agency of the State, the applicant was exempt from local zoning and land use controls. Special Term concluded that the applicant was obligated to comply and had failed to do so. We agree.

Generally, the State or its agency is not required to conform to local zoning regulations when performing a governmental, as distinguished from a proprietary, function (*Nehrbas v Incorporated Vil. of Lloyd Harbor*, 2 NY2d 190; *County of Westchester v Village of Mamaroneck*, 22 AD2d 143, affd 16 NY2d 940; 1 Anderson, NY Zoning Law and Practice [2d ed], § 9.04, p 429). The State may, however, subject itself to local zoning through legislation (see *Matter of Ibero-American Action League v Palma*, 47 AD2d 998). We are not persuaded by respondents' argument that, by virtue of sovereign immunity, they are exempt from the requirements of ECL 27-1105 (subd 2, par [f]), which, insofar as is here pertinent, provides: "The board shall deny an *application* to construct or operate a facility * * * if construction or operation of such facility would be contrary to *local zoning* or land use regulations in force on the date

of the application" (emphasis added). Although the board has been entrusted with the implementation of ECL article 27 (tit 11), and its interpretations are entitled to respect, they are by no means dispositive (see *Koch v Dyson*, 85 AD2d 346, 370). Pursuant to ECL 27-1105 (subds 1, 2), no *person* may commence construction or operation of a new industrial hazardous waste facility without first receiving a *certificate* upon *application* to DEC. The definition of "person" includes any "political subdivision, government agency * * * or any other legal entity whatsoever" (ECL 27-1101, subd 1). By its terms, the definition is comprehensive and certainly would include an application made on behalf of DEC.

Respondents argue, however, that since ECL 27-1105 (subd 2, par [f]) does not expressly indicate that all *persons* are subject to local zoning, but only that an *application* should be denied if contrary to local zoning, a State proposed facility remains exempt. We hold that this argument must fail. Read in conjunction, ECL 27-1105 (subd 1) and 27-1105 (subd 2, par [f]) clearly require that any application, regardless of whether a State agency is the applicant, be in compliance with local zoning regulations. In our view, these provisions delineate a legislative intent to waive sovereign immunity for purposes of local zoning requirements (see *Koch v Dyson, supra,* pp 368-372). The reasonableness of such construction becomes readily apparent in view of the nature of the instant project, which involves the imposition on a community of a dump site for dangerous and toxic chemicals. Having reached this conclusion, it is not necessary to decide whether the construction and operation of a hazardous waste facility constitutes a governmental or proprietary function.

We further conclude that the proposed PCB disposal site is not consistent with the Town of Fort Edward's zoning ordinance. As noted above, Site 10 is in an area zoned as "agricultural-residential" with nine permitted uses, including "[g]overnmental buildings and uses including police and fire stations" (Town of Fort Edward Zoning Ordinance, § 25-8, subd A). Respondents argue that a plain reading of the ordinance permits all governmental uses, including the operation of a hazardous waste facility

(McKinney's Cons Laws of NY, Book 1, Statutes, §§ 76, 94). While a strict construction of the ordinance language might support such an assertion, we deem it more appropriate to construe the ordinance with close adherence to its central purpose (see McKinney's Cons Laws of NY, Book 1, Statutes, §§ 97, 98, 113; 1 Anderson, NY Zoning Law and Practice [2d ed], § 12.02, p 603). Significantly, the final regulations applicable to the siting of industrial hazardous waste facilities required that the proposed site "be considered for consistency with the intent of the municipal master land use plan, and with local laws, ordinances, rules and regulations * * * to insure that the construction and operation of the proposed facility will not adversely impact on planning schemes developed by the municipalities in which they are located" (6 NYCRR 361.7 [b] [6] [i]). Stated another way, the regulations require a pure sensitivity to local zoning concerns (ECL 27-1103, subd 2, par f). A review of the ordinance shows that the other permitted uses include agricultural land uses and industries, nurseries and greenhouses, single-family dwellings, churches, public parks, schools and advertising. The stated goal for the town's Hudson River shoreline and other natural agricultural settings is that they "should be preserved and protected from adverse land use". The area, in its present posture, is characterized as a "great natural resource to the town".

Without deciding the exact limits of subdivision A of section 25-8 of the town's zoning ordinance, it is difficult to perceive how the phrase "[g]overnmental * * * uses", especially illustrated by the examples of police and fire stations, would include a hazardous waste facility. Certainly, the proposed use is not consistent with the comprehensive plan outlined above, and in reality, would work an extraordinary expansion of the governmental uses envisioned by the drafters of the ordinance. While it is true, as respondents argue, that a zoning ordinance is to be strictly construed in favor of the property owner (*Matter of Allen v Adami*, 39 NY2d 275, 277; *Matter of 440 East 102nd St. Corp. v Murdock*, 285 NY 298, 304), the State, as applicant herein, is not the actual landowner. Accordingly, while we are fully aware of the perplexing and complex problems

posed by the continued presence of PCBs in the Hudson River, and the laudatory and ameliorative purposes behind the proposed project, due deference to the basic spirit and purpose of the Town of Fort Edward zoning plan compels the rejection of the proposed facility as a permitted use (ECL 27-1105, subd 2, par [f]). We note that the final regulations do authorize approval of a certificate conditioned upon the receipt of a zoning variance or special use permit (6 NYCRR 361.4 [f] [2]), but emphasize that the issuance of either a variance or permit remains a function of the Town of Fort Edward.

We are next required to consider whether DEC's failure to have timely complied with ECL 27-1103 renders the determination void. Subdivision 1 of that section requires that criteria for siting hazardous waste facilities shall be *published* by the commissioner within one year of the effective date of the section. The section also requires that the commissioner adopt criteria prescribing the form and content of applications for certificates of environmental safety and public necessity to construct such facilities. Subdivision 2 explicitly sets forth seven factors, among others, to be included in the siting criteria. Subdivision 3 obligates the applicant to supply detailed information regarding seven different components on the application. It is undisputed that the commissioner had failed to promulgate final rules and regulations adopting the criteria and application form specified and required by ECL 27-1103 prior to acceptance of the subject application. Despite petitioners' objections and motion to suspend the proceedings as premature at a prehearing conference on September 24, 1981, the board proceeded to conduct 22 hearing sessions taking testimony, without a guiding rule or regulation in place.

■ Respondents contend that ECL 27-1103 is self-executing and that the board is required to act on applications received even in the absence of adopted and published criteria. They argue that the language of the statute is not mandatory but merely directory, citing *Matter of Rochester Gas & Elec. Corp. v Maltbie* (188 Misc 39, affd 272 App Div 162). This argument, buttressed by the fact that draft regulations were available during the hearings and ulti-

mately became final in essentially the same form before the decision was actually rendered, remains unpersuasive for several reasons. First, and foremost, section 8 of article IV of the New York State Constitution provides that, "No rule or regulation made by any state department, board, bureau, officer, authority or commission * * * shall be effective until it is filed in the office of the department of state". Second, ECL 3-0301 (subd 2) clearly provides that criteria, rules and regulations adopted by the commissioner, with the advice and approval of the State Environmental Board, *shall not become effective* until 30 days after filing with the Secretary of State. Further, ECL 5-0107 (subd 2) provides that the State Environmental Board shall approve any environmental criterion, rule or regulation promulgated by the commissioner.

From these statutes, one unalterable fact is clear. The Legislature intended that the commissioner act in consultation with the State Environmental Board in the promulgation of environmental criteria, rules and regulations to formulate the bases for issuance of certificates of environmental safety and public necessity; further, that the product of their creations be filed with the Secretary of State and be published. Once in place, these criteria, rules and regulations describe the forms on which applications to the board are to be made, and the governing guidelines and parameters within which the board and DEC are to conduct hearings and make determinations. Absent any criteria, rules and regulations, there would be absolutely no guidance for the public nor limitation upon respondents. The Constitution in clear and unambiguous language requires that every rule and regulation made by a State officer, body or agency be filed *if it is to be effective* (*People v Cull,* 10 NY2d 123, 129). Here, since the applicant for the permit was the Division of Water of DEC, in essence seeking approval from its own commissioner who himself failed to promulgate the criteria, rules and regulations governing the hearing and decision-making process, the situation became much more critical. Respondents' argument that the draft regulations were sufficient pales in the light of the clear and unambiguous language of the Constitution and statutes delineating both the methodology and

obligations governing promulgation of the relevant criteria, rules and regulations, and is unpersuasive.

■ Finally, we agree with Special Term that the board erred in denying petitioners' February 3, 1982 motion pursuant to section 303 of the State Administrative Procedure Act to disqualify Robert Persico from participating in board deliberations on the application. We recognize that the Commissioner of DEC is a statutory member of the board (ECL 27-1105, subd 2, par [d]) and that Persico was a lawfully designated substitute. Furthermore, a combination of investigative and adjudicative functions in administrative adjudication is not necessarily improper (State Administrative Procedure Act, § 303; *Withrow v Larkin,* 421 US 35, 46-55). The sanctioning of such a dual capacity, however, does not extend to an instance where, as here, Persico served as both general counsel to the applicant and as decision maker regarding the applicant's acceptability. It is beyond cavil that an applicant before an administrative agency is constitutionally entitled to unprejudiced decision making (*Matter of Warder v Board of Regents,* 53 NY2d 186, 197, cert den 454 US 1125). In our view, the conflict in Persico's dual roles is inherently incompatible with procedural due process. In an instance where DEC is the applicant, the better practice is for the commissioner to recuse himself and designate some independent third party in his stead. Nor do we find the motion to recuse untimely. It should be emphasized that petitioners did not move to invalidate the entire proceedings, but only to disqualify Persico. Such disqualification would not have precluded the remaining seven members of the board from registering an effective decision. Since the motion was made before a determination by the board, and would not have negated the board's powers or invalidated the hearings completed, we conclude that it was reasonably prompt and should have been granted (see *Marcus v Director, Off. of Workers' Compensation Programs,* 548 F2d 1044, 1051).

The judgment should be affirmed, with costs.

Kane, J. P., Main, Mikoll and Yesawich, Jr., JJ., concur.

Judgment affirmed, with costs.