In the Matter of JOHN MAGEE et al., Appellants, v JOHN Rocco et al., Constituting the Planning Board of the Town of Orangetown, Respondents, and JOHN DENEFRIO et al., Intervenors-Respondents. (And Another Related Proceeding.)

BRADLEY INDUSTRIAL PARK et al., Appellants, v JOSEPH COLELLO et al., Constituting the Town Board of the Town of Orangetown, et al., Respondents, and BLAUVELT ASSOCIATION OF RESIDENTS, INC., et al., Intervenors-Respondents.

In the Matter of BRADLEY INDUSTRIAL PARK et al., Appellants, v TOWN OF ORANGETOWN et al., Respondents.

Third Department, June 21, 1990

54

## APPEARANCES OF COUNSEL

*Steven M. Silverberg, P. C.,* for appellants.

*Morton Lieb, Town Attorney (Joseph Trachtenberg* of counsel), for John Rocco and others, respondents.

*Diana Reif, Town Attorney (Joseph Trachtenberg* of counsel), Joseph Colello and others, respondents.

*Savad & Gavioli (Wayne A. Gavioli* of counsel), for John Denefrio and others, intervenors-respondents.

*Richard C. Fields, P. C.,* for Blauvelt Association of Residents, Inc. and others, intervenors-respondents.

## OPINION OF THE COURT

HARVEY, J.

These appeals all stem from a common set of facts. Bradley Industrial Park consists of approximately 110 acres of land located principally in the Town of Orangetown, Rockland County. Railroad tracks split this land into two separate 55-acre parcels. The bulk of the land located east of the tracks was developed with a number of commercial buildings. The land to the west was developed with two commercial buildings but contained approximately 45 acres (referred to as Section IV) which were vacant and were zoned primarily for commercial use prior to August 1988. It seems that the property was

sought to be developed in stages rather than under a single site development plan.

Chronologically stated, in May 1984, the town and its Planning Board retained a consulting firm to consider the town's development and zoning code which had not been comprehensively updated since 1963. Thereafter, a citizens zoning advisory committee was established and the matter was referred to the Planning Boards of both the town and the county. Public hearings were then conducted in the various hamlets in the town with notice of such meetings published in local newspapers. In October 1986, a proposed master plan implementation report was submitted by the consulting firm. Following a public hearing in November 1986, the Town Planning Board (hereinafter Planning Board) adopted the proposed master plan on December 10, 1986.

Bradley Industrial Park and its owners (hereinafter collectively referred to as Bradley) submitted an application to the Planning Board for development of Section IV as a single site development plan for the first time in June 1987. It was rejected by the Planning Board because no environmental impact statement (hereinafter EIS) had been supplied. Subsequently, Bradley met with the Building Inspector and prepared an outline of an EIS to submit to the Planning Board. In November 1987, the Planning Board apparently approved the outline and Bradley submitted a draft of the EIS (hereinafter DEIS) to the Planning Board for its consideration at its January 13, 1988 meeting. At this meeting, the Planning Board made a decision disapproving Bradley's application for prepreliminary site development plan review for reasons unrelated to the DEIS.* On that point, the Planning Board advised Bradley that, because a DEIS had been submitted, the entire State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) process had to be implemented and brought to a conclusion prior to any further submissions being considered by the Planning Board. Although the Planning Board then circulated copies of the DEIS to the relevant governmental bodies and officials, a letter was immediately sent to those

---

* This decision gave the following reasons for the disapproval: (1) the development plan was based on light industrial zoning in a laboratory-office zoning district, (2) the plan as shown was a gross overdevelopment of the property, (3) the plan showed massive macadam areas and few green areas, (4) petitioners had proposed screening on property which was not a part of the site plan, and (5) the plan as shown would have required an excessive number of variances.

same parties from the Town Attorney informing them that the circulation of the DEIS was erroneous since the plan upon which the DEIS was based had been disapproved.

Subsequently, Bradley was apparently advised in a meeting between the parties to resubmit its application, which it did. On April 13, 1988, the Planning Board again disapproved Bradley's application for prepreliminary site development plan review for essentially the same reasons. It was also stated that the DEIS was not accepted and would not be referred out for further analysis and comment. At about this same time, the Town Board decided to begin implementing a new zoning code in accordance with the master plan previously adopted.

Accordingly, the town declared itself to be the lead agency in accordance with the applicable provisions of SEQRA and issued a positive declaration finding that the proposed adoption of amendments to the zoning code was a "type I" action. A DEIS was then prepared by a consulting firm and a notice of completion was issued on April 26, 1988. Comments on the DEIS were accepted until June 2, 1988 and public hearings were held on two dates in May and June 1988. On June 27, 1988, the Town Board adopted by resolution a 60-day moratorium against any plans which had not received preliminary approval. This resolution was amended by resolution the next day to provide that only those plans in conflict with the proposed amendments to the zoning code would be affected. As a result of this moratorium, the Planning Board did not consider Bradley's application for prepreliminary review of a site development plan which had been scheduled for consideration on June 29, 1988.

Thereafter, a final EIS (hereinafter FEIS) was submitted in July 1988 with additional comments being submitted thereafter. On August 15, 1988, the Town Board made a findings statement after adoption of proposed amendments to the zoning code and then adopted Local Law No. 5 of 1988, thereby amending the zoning code. Under the amendment to the zoning law, much of Bradley's property was rezoned for residential use.

As a result of the various above-described actions taken by the town and its officials, Bradley commenced three CPLR article 78 proceedings (two of which were later consolidated) and a declaratory judgment action in Supreme Court. Various decisions of that court prompted Bradley to pursue three

separate appeals to this court which will now be disposed of in logical, rather than chronological, sequence.

### Bradley Industrial Park v Colello

Following the amendment of the town's zoning code on August 15, 1988, Bradley commenced this action for a declaratory judgment against the Town Board. The complaint contained 11 causes of action, principally alleging that the Town Board failed to adequately comply with SEQRA in adopting the new zoning ordinance. Various property owners with land abutting Bradley's property were allowed to intervene in this matter. Following joinder of issue, Bradley moved for partial summary judgment on the first four causes of action and the intervenors cross-moved for summary judgment dismissing those same causes of action. Supreme Court denied Bradley's motion and granted the intervenors' cross motion, holding that Bradley did not have standing under SEQRA to sue. Bradley then appealed.

■ Initially, we disagree with Supreme Court's finding that Bradley did not have standing to bring this action. Supreme Court held that Bradley had failed to allege any injury within the zone of interest protected by SEQRA basically because Bradley substantially alleged a potential economic injury from the rezoning, rather than an environmental one *(see, Matter of Har Enters. v Town of Brookhaven,* 145 AD2d 562, 563, *affd on other grounds* 74 NY2d 524). Nonetheless in *Matter of Har Enters. v Town of Brookhaven* (74 NY2d 524, *supra),* the Court of Appeals specifically disagreed with this view of standing. The court held that where the very subject of the proposed action is the petitioner's property, the petitioner is presumptively adversely affected by the alleged SEQRA violations and no specific allegation of environmental harm is necessary in order to challenge the sufficiency of an agency's efforts to comply with SEQRA *(supra,* at 526, 529).

■ Although we find that Bradley does have standing, we nonetheless affirm the grant of partial summary judgment on the merits. Bradley argues that the Town Board failed to comply with SEQRA by failing to commence a SEQRA review of the proposed amendment to the zoning ordinance at the earliest possible time *(see,* 6 NYCRR 617.1 [c]; ECL 8-0109 [4]). According to Bradley, the Town Board violated the spirit and letter of SEQRA by allegedly not commencing the review process until after its position had become irrevocably fixed. Bradley opines that the Town Board should have commenced

the SEQRA review process in 1986 when it began participating in hearings on the implementation of the master plan.

Bradley's contentions lack merit. 6 NYCRR 617.13 (d) (18) provides that the collection of information which does not commit an agency to undertake, fund or approve any Type I or unlisted action is a Type II action which does not require an EIS or any other SEQRA procedure *(see,* 6 NYCRR 617.13 [a]). Under 6 NYCRR 617.3 (c) (1), an agency or applicant is not prohibited from: "conducting concurrent environmental, engineering, economic, feasibility and other studies and preliminary planning and budgetary processes necessary to the formulation of a proposal for action, provided those activities do not commit the agency to commence, engage in or approve such action". Clearly, nothing in the master plan or implementation report had the effect of committing the Town Board to amend the zoning law. As noted in the implementation report, the master plan: "will not in itself change any zoning nor assure the implementation of any plan proposals. The adopted Master Plan will become an advisory document which is designed and intended to guide all public agencies, private individuals and organizations in making appropriate decisions for the orderly and attractive development of the Town." Accordingly, the Town Board did not commit to commence, engage in or approve amendments to the zoning law until April 1988 when the Town Board decided to implement the previously adopted master plan, issued a position declaration and directed the preparation of a DEIS. Since the process was initiated at the "earliest possible time" (6 NYCRR 617.1 [c]), Bradley's allegations of impropriety are groundless.

The remaining arguments for reversal advanced by Bradley on this appeal have been examined and rejected.

*Matter of Magee v Rocco*

In this case, Bradley commenced two CPLR article 78 proceedings, subsequently consolidated, to challenge the Planning Board's two determinations on January 13, 1988 and April 13, 1988 which disapproved Bradley's application for prepreliminary site development plan review for various reasons. Supreme Court denied the petitions on the merits and Bradley moved to reargue. Upon granting reargument, Supreme Court adhered to its original decisions but found additionally, based upon the recent August 15, 1988 amendment to the applicable zoning law which occurred in the interim, that Bradley's renewed applications were rendered moot.

█ In our view, Supreme Court correctly found that the allegations in these petitions were rendered moot by the August 15, 1988 zoning amendments. It is a "general rule that the law as it exists at the time a decision is rendered on appeal is controlling" *(Matter of Alscot Investing Corp. v Incorporated Vil. of Rockville Centre,* 64 NY2d 921, 922). "Accordingly, if an amendment to the applicable zoning ordinance outlaws a use for which a permit was sought, a denial of such permit will be sustained although the amendment became effective after the denial of which the appellant complains. Such an amendment will be honored by the reviewing court although it was passed during the pendency of the appeal or during the period when the applicant for relief was awaiting decision" (2 Anderson, New York Zoning Law and Practice § 26.23, at 409-410 [3d ed]).

In the case at bar, it appears that the amendments to the subject zoning code prohibit the development proposed in Bradley's site plan. Accordingly, Supreme Court correctly determined pursuant to the general rule that Bradley's motions for reargument were moot. Bradley, however, points out that an exception to the general rule has been carved out by the courts when "special facts" are present to show that the municipality, in bad faith, delayed or denied approval while it altered the zoning ordinance to bar the prospective development *(see, e.g., Matter of Triangle Inn v Lo Grande,* 124 AD2d 737, 739; *Matter of Hatcher v Planning Bd.,* 111 AD2d 812, 813). Bradley contends that the "special facts" exception applies because the Planning Board allegedly deceived it by requiring it to waste time attempting compliance with SEQRA while all the while planning to amend the zoning law.

Based on the record before us we cannot agree with Bradley's allegation that "special facts" have been presented so as to entitle Bradley to relief *(see, Matter of Bibeau v Village Clerk of Vil. of Tuxedo Park,* 145 AD2d 478, 479). There is no evidence before us that the Planning Board deliberately delayed rendering a determination as to Bradley's application and that such delay was the product of malice, oppression, manipulation or corruption *(see, Matter of Aversano v Two Family Use Bd.,* 117 AD2d 665, 667; *see also, Cymbidium Dev. Corp. v Smith,* 133 AD2d 605, 608, *lv denied* 70 NY2d 615). Supreme Court found that all of the proceedings had been held expeditiously and the decisions rendered in a timely

manner. Without even a suggestion in the record of bad faith on the part of the Planning Board *(see, Matter of Hatcher v Planning Bd.,* 111 AD2d 812, 813, *supra),* we agree with Supreme Court that no factual issue has been presented that would require a hearing.

In light of our finding that this appeal must be dismissed as moot, it is unnecessary to address the remaining arguments advanced herein by the parties.

*Matter of Bradley Industrial Park v Town of Orangetown*

Bradley commenced this CPLR article 78 proceeding against the town, the Town Board and the Planning Board to challenge the 60-day moratorium adopted by the Town Board in June 1988 against the consideration of any plans which had not received preliminary approval that might be in conflict with the proposed zoning amendments. Bradley alleged that the moratorium was improperly adopted by the resolution. Supreme Court denied the petition on the merits as well as holding that the application was rendered moot by the amendment of the zoning ordinance. Bradley successfully moved to reargue but, upon reargument, Supreme Court adhered to its original determination.

Clearly, this appeal must also be dismissed as moot for the reasons previously mentioned in Bradley's appeal labeled *Matter of Magee v Rocco.* The additional circumstance in the instant case of the existence of a moratorium does not mandate a different result. In *Matter of Alscot Investing Corp. v Incorporated Vil. of Rockville Centre* (64 NY2d 921, *supra),* the petitioner challenged the procedure employed by a town in the adoption of a moratorium. The Court of Appeals found that even if a defect in the procedure was found, it would not, without more, oblige a court to apply a superseded law *(supra,* at 922-923). Similarly, even if we assumed, arguendo, that the moratorium by resolution was improper, we would not change the result.

No other issue in this case need be addressed.

KANE, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Order affirmed, without costs.

Appeals from the three judgments dismissed, as moot, without costs.