OPINION OF THE COURT
Edward M. Horey, J.
The proceeding before the court is brought under CPLR article 78. The petitioners are residents of the Town of Ash-ford, Cattaraugus County. The respondent is the Town Board of that township.
The relief requested is that this court annul and set aside a resolution of the Town Board adopted on July 10, 1991 which consented to and urged the passage of a bill pending in the New York State Legislature to locate the mandated State’s low-level radioactive waste site in the Town of Ashford on lands owned by the State and operated as a nuclear service center.
The factual background of the instant proceeding follows.
In July 1986 the New York Legislature passed and the Governor approved of a bill to create a low-level radioactive waste site in the State of New York. This legislation was this State’s response to a Federal act which required each State to undertake responsibility for assuring adequate disposal of low-level radioactive waste on or before January 1, 1993. (See, Low-Level Radioactive Waste Management Act, L 1986, ch 673.)
Under the terms of the 1986 legislation a commission to determine the siting of one or more low-level radioactive waste sites in the State was created.
What is of prime significance to the proceeding at bar is that the 1986 legislation expressly prohibited the location of any low-level radioactive waste site at or on the State’s nuclear site in the Town of Ashford.
It is a matter of public knowledge, of which this court takes judicial notice, that 600,000 gallons of high-level nuclear waste are located on this nuclear site in the Town of Ashford and that the State in concert with the Federal Government is operating a demonstration project to clean up such site by means of solidifying such high-level waste.
This court also takes judicial notice that neither the appointed State siting commission, nor the respondent Town Board or any private or governmental agency has ever caused *198 a detailed systematic survey of whether the nuclear site in the Town of Ashford meets the siting criterion for the establishment of a low-level radioactive waste site.
This court also takes judicial notice of the publicly acknowledged fact that at some time in the spring of 1991 members of the West Valley Chamber of Commerce met with representatives of organizations that produce or represent producers of low-level radioactive waste in New York State. As a consequence of these meetings a benefit package that would be paid to the Town of Ashford if a low-level radioactive site were located there was agreed upon.
While the active participation in the negotiation by members of the Town Board is denied in this proceeding, this court finds that the results of these negotiations were known by the Town Board for the reason that the outline of the benefits package purporting to be valued at $4.2 million was first made publicly known at a meeting of the Town Board on June 12, 1991.
Thirteen days later some person or persons who remain unknown caused a proposed bill to be jointly introduced in both houses of the New York Legislature on June 25, 1991. Such bill is identified as Senate Bill No. 6283/Assembly Bill No. 8748. This bill proposes to remove the prohibition against locating a low-level radioactive waste site in the Town of Ashford contained in the 1986 legislation and contains a benefits package for both the Town of Ashford and the County of Cattaraugus. This bill refers to the Town of Ashford as a "host community” and erroneously and prematurely "finds and declares” that such Town Board has duly adopted a resolution inviting location of the site in the township.
Following the initial disclosure of the proposal and benefits package on June 12, 1991 considerable controversy arose among the residents of Ashford township.
On June 20, 1991 the Town Board announced that a public information meeting would be held the following day, to wit, June 21, 1991. On the same day, viz., June 20, 1991, the Town Board also caused notice to be given that on June 26, 1991 it would take action on a resolution requesting the State to locate the low-level site in the township.
At the public meeting on June 21, 1991 strong opposition was voiced to the action proposed to be taken on June 26, 1991.
Either unaware or aware and uncaring of the controversy in *199 the township, and of the proposed action scheduled for June 26, 1991, the unknown sponsors of the State’s bill caused the same to be introduced in both houses of the Legislature on June 25, 1991.
At the meeting held on June 26, 1991, the Town Board was faced with such stiff opposition that it declined to vote on the proposed resolution requesting location of the site in the township. Instead the Board voted to hold a nonbinding referendum on that resolution on July 9, 1991.
The next meeting of the Town Board was held on July 2, 1991. As a consequence of this meeting the Town Board appointed a 13-member committee to among other items: "To ask anyone they like to speak before them regarding the matter at hand, including the siting process and how it protects the Town and its residents”.
On July 5, 1991 the appointed committee met with representatives of radioactive waste generators without reaching any conclusion or recommendations.
On July 8, 1991 the appointed committee met with the Town Board and expressed their concern that they had not had ample time to examine the assigned matters. Nine of the 13 members requested additional time not to exceed 60 days to accomplish their objectives.
The Town Board declined to follow the request of the committee for additional time.
On July 9, 1991 the nonbinding referendum was held. Of a total of 1,235 voters, 702 voters representing 56.8% voted against the proposal of consenting to the location of the site. Five hundred thirty-three voters or 43.2% voted in favor.
Despite the result of the referendum the Town Board on the following day, to wit, July 10, 1991, passed a resolution unanimously consenting to the location of the site as proposed in the pending State bill on the terms proposed therein. The resolution did request that additional prerequisites for the benefit of the town be added to the bill.
While the respondent has denied knowledge or information sufficient to form a belief to some of the factual determinations set forth, this court hastens to state that it has taken judicial notice of only those facts which have been published and are publicly known to be factually accurate.
The proceeding before the court contests the legality of the referenced resolution of the Town Board of July 10, 1991.
Relevant and necessary to a comprehension of the proceed *200 ing at bar is a determination of why the West Valley nuclear site was excluded in the 1986 legislation as a possible site for the proposed low-level radioactive waste facility.
It appears that there is no record of debate in either the State Assembly or Senate available from which to glean an insight to the reason of the exclusion.
Some light on the issue is found in the memorandum of the Governor which approved the 1986 legislation that excluded West Valley as a possible site. The Governor’s memorandum states in relevant part: "Under the bill, a siting commission will select the site and disposal methods which will best preserve and protect the public health and safety and the environment. In furtherance of this goal, the bill precludes the construction of a low-level radioactive waste disposal facility at West Valley, New York (emphasis added)”. (See, 1986 NY Legis Ann, at 286.)
Clearly this is a posited statement of the Governor that the reason the Legislature had intentionally excluded West Valley as a site for the proposed new low-level radioactive facility in issue was because such location would not "preserve and protect the public health and safety and the environment.” This court regards the Governor’s approval of the bill as an endorsement of the Legislature’s conclusion that West Valley was not an appropriate site.
More detailed insight for the exclusion of West Valley is found in the 1987 final environmental impact statement prepared by the State’s Department of Environmental Conservation. That report states in relevant part that the reason West Valley was excluded from consideration of the 1986 legislation was that "past releases of radioactivity at West Valley might mask the environmental monitoring program of the facility the state will develop. The facility could not demonstrate that the performance objectives were achieved.” (Emphasis added.)
This court is of the opinion that a fair reading of this report is that the State’s Department of Environmental Conservation concluded that the presence of radioactive material already located at the West Valley nuclear site and the admitted accidental releases of that dangerous material might impair the programs designed for safety of operation of the new low-level radioactive site.
Further, it would seem to this court reasonable to speculate that the reverse might be true, viz., that the presence of a low-level radioactive waste site in a new site might impair the *201 safety monitoring programs of the existing nuclear site especially if there be accidental leaks from the new site.
Whether that be true or not, the information contained in the cited report of the Department of Environmental Conservation was unknown to this court before the institution of the present proceeding. It constitutes a new and novel revelation. This court regards it of the utmost significance. This court is of the opinion that such report is generally unknown to the residents of the town and the public generally.
There is nothing presented in the record of the proceeding before this court that indicates any change or alleviation of the possible dangers to safety that existed in 1986 which led to the rejection of West Valley as a site for the low-level radioactive facility. In sum, if the dangers were there in 1986, they are there today so far as this proceeding discloses.
One may only speculate on the reasons that would now prompt a reversal of the prior legislative, executive and departmental determinations on safety and lead the State to a reconsideration of West Valley as a possible site.
Turning to the specifics of the instant proceeding, this court treats first the respondent Town Board’s argument that the petitioners do not have standing to require the Town Board to comply with the State Environmental Quality Review Act (SEQRA) (ECL art 8). On this issue the respondent loses.
In Matter of Har Enters. v Town of Brookhaven (74 NY2d 524), our Court of Appeals has held that whether a petitioner has standing to ask a court to review a Town Board’s compliance with SEQRA the question is whether a petitioner has a significant interest in having the mandates of SEQRA enforced, not whether petitioner can presently demonstrate an adverse effect. This court holds that the petitioners residing and owning property adjacent to or in proximity to the proposed site do have the required significant interest. The decision made is in complete harmony with the decision of Matter of Sun-Brite Car Wash v Board of Zoning & Appeals (69 NY2d 406, 409-410) which held that: "A property holder in nearby proximity to premises that are the subject of a zoning determination may have standing to seek judicial review without pleading and proving special damage, because adverse effect or aggrievement can be inferred from the proximity.”
Since the instant proceeding involves SEQRA and the regulations adopted thereunder, it is appropriate, indeed necessary, to consider the purpose of the act and the obligations imposed thereunder.
*202 Such act was enacted in 1975. It is contained in ECL article 8 (ECL 8-0101 — 8-0117). The regulations are set forth in 6 NYCRR part 617.
In speaking of the act our Court of Appeals has stated that it has made the protection of the environment one of New York’s "foremost policy concerns.” (E.F.S. Ventures Corp. v Foster, 71 NY2d 359 [1988].) In Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400) the Court of Appeals held that compliance with the act and the regulations was an "affirmative” obligation on the part of local governments.
In issue in this proceeding is whether or not the Town Board of Ashford breached its "affirmative obligation” to comply with the provisions of SEQRA and in particular the regulations adopted thereunder which implement the act.
It is provided in the regulations that "[n]o agency involved in an action shall carry out, fund or approve the action until it has complied with the provisions of SEQR” (6 NYCRR 617.3 [a])-
The court finds it indisputable that the Town Board of Ashford is an "agency” as that term is used in the regulations. (See, 6 NYCRR 617.2 [c], [w].)
One of the most significant questions to be resolved in this proceeding is whether the conduct of the Town Board constituted an "action” within the meaning of the cited regulation. This issue is vigorously disputed by the litigants. As defined "action” includes: "(2) agency planning and policy making activities that may affect the environment and commit the agency to a definite course of future decisions.” (6 NYCRR 617.2 [b] [2].)
Upon a full review this court reaches the conclusion that the adoption of the resolution of July 10, 1991 by the Town Board does constitute "action” within the meaning of the regulation.
Clearly the adoption of that resolution was one of considerable moment. It expressed in positive terms the desire of the Town Board that the low-level radioactive waste facility be located in the Town of Ashford. The recited purpose of the resolution was stated to be a consent to the location of such a site. "The purpose of the resolution is to communicate to the State Legislature the consent of the town to the siting of low-level radioactive waste management facilities on the state owned land in the town at the Western New York Nuclear Service Center on the terms, including local compensation and *203 benefits in the bill referred to above” which was a legislative bill previously introduced in both the State Senate and Assembly and numbered S. 6283/A. 8748. (See, Resolution of Town Board of Ashford, July 10, 1991 [emphasis added].)
To this court this resolution constituted not only an open invitation but a formal consent to the State to pursue its proposed opening of the door of prohibited action which had been so solidly closed, locked and bolted by the 1986 act of the Legislature. This was not, as the respondent Board argues, merely an "advisory” communication. It was a formally enacted "Resolution” of the Town Board and designated as such. Its adoption was "an act declarative of the will of the corporate body.” (Hess v Board of Educ., 41 AD2d 151, 153 [3d Dept 1973]; see also, 25 NY Jur 2d, Counties, Towns, and Municipal Corporations, § 256.) It is determined that the adoption of the resolution constituted a "planning and policy making activit[y]” within the meaning of the regulation (6 NYCRR 617.2 [b] [2]).
The court also finds that it is undeniable that the location of a low-level radioactive waste facility "may affect the environment” within the meaning of the same regulation.
Lastly the consent and approval of the proposed bill which included among other items the town development of a 20-acre industrial development site on the existing nuclear site; and the town’s development of a 25,000 square foot Town of Ashford Community Center and the town’s development of a 200-acre golf course, park or other recreational facility also on the nuclear site; together with additional proposed developments, all committed the agency (Town Board) to a "definite course of future decisions.” Thus, every aspect of the definition of "agency planning and policy making activities” which constitute "action” under the regulations are fully met.
Havir. g concluded that the passage of the resolution of July 10, 1991 by the Town Board was an "action” within the meaning of the regulations, there remains only the question of whether an environmental impact study was required prior to such action. This issue is also hotly contested.
6 NYCRR 617.1 (c) relates specifically to the requirement of an environmental impact study. It states in relevant part "[t]he basic purpose of SEQR is to incorporate [into an agency planning review and decision-making processes] consideration of environmental factors * * * at the earliest possible time * * * and, if it is determined that the action may have a *204 significant effect, prepare or request an environmental impact statement. ” (Emphasis added.)
6 NYCRR 617.12 also sets requirements for the preparation of an environmental impact statement. (See, 6 NYCRR 617.12 [a].)
Further, 6 NYCRR 617.11 (b) obligates an agency to:
"consider reasonably related long-term, short-term and cumulative effects, including other simultaneous or subsequent actions which are:
"(1) included in any long-range plan of which the action under consideration is a part;
"(2) likely to be undertaken as a result thereof; or
"(3) dependent thereon.”
The decision of the Appellate Division, Fourth Department, and other appellate courts have interpreted the referenced regulations as requiring the preparation of an environmental impact study at the planning and policy-making stage even though later action may also involve environmental review. (See in particular, Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd., 106 AD2d 868 [4th Dept 1984], and the cases therein cited.)
The requirement that an environmental impact study first be prepared is not merely insistence upon a blind, dumb and slavish adherence to some trivial and meaningless administrative regulation. Sound reasons support the requirement.
Our Court of Appeals has outlined such reasons. That court stated in Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, 46 [1982]) an environmental impact report "should be accessible to members of the town board and the public prior to action on the proposal in question. The 'detailed information about the effect which [the] proposed action is likely to have on the environment, [the listing of] ways in which any adverse effects of such an action might be minimized, and [suggested] alternatives to such an action’, to be contained in the environmental impact statement, should be available 'to form the basis for a decision whether or not to undertake or approve such action’ (ECL 8-0109, subd 2).”
The absence of an environmental impact study in the case at bar required the voters at the referendum to cast their ballots without the benefit of the knowledge which such a study would have disclosed. Such a consequence in the decision of our Court of Appeals "clearly frustrate^] the objec *205 tives” of SEQRA. (See, Matter of Tri-County Taxpayers Assn. v Town Bd., supra, at 47.) Similarly the absence of the information which such a study would have imparted permitted the Town Board to override the expressed will of the majority at the election and to take the action which it did ignorant of the possible environmental consequences to the people and property of the township that such a study would have disclosed.
Not only the requirement that an environmental study be prepared but that it be prepared at the "earliest possible time” was stressed by the Appellate Division, Fourth Department, in the decision of that court in Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd. (106 AD2d 868 [4th Dept 1984], supra). There the court held that (supra, at 869): "Under law, consideration must be given at the earliest possible time (ECL 8-0109, subd 4) to the impacts which 'may be reasonably expected to result from the proposed action’ (6 NYCRR 617.12 [a]), including impacts resulting from any long-range plan of which the action under consideration is a part (6 NYCRR 617.11 [b]; see Onondaga Landfill Systems v Flacke, 81 AD2d 1022). Environmental review of the entire project is required before ' "any significant authorization is granted for a specific proposal” ’ (Matter of Programming & Systems v New York State Urban Dev. Corp., 61 NY2d 738, 739).”
The decision in Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd. (supra) also addressed the argument that because later environmental studies might be required there was no need that the Town Board cause an environmental impact study to be completed. This argument has been advanced by the respondent Town Board which points to the requirement under the proposed State legislation that the State complete an environmental study before it finally determines the Town of Ashford as the site for the low-level radioactive disposal facility.
In pointing to an analogous requirement in the Kirk-Astor case that a further environmental study would be required before specific plans were approved for a rezóning project, the court said (supra, at 869): "In sum, even though environmental review may be required at the time application is made for specific site plan approvals * * * the Town Board must identify at the rezoning stage the relevant areas of environmental concern associated with the project. It must take a 'hard look’ at the impacts of the specific project proposal that prompted the application for rezoning.”
*206 Similarly in Town of Red Hook v Dutchess County Resource Recovery Agency (146 Misc 2d 723, 727 [Sup Ct, Dutchess County 1990]) the court citing 6 NYCRR 617.2 (b) held that a local agency’s policy-making activities designating a preferred location for an ash residue landfill committed the agency to a definite course of future action and was a final determination for judicial review purposes, even though "further studies in preparation for and in conjunction with an application to DEC for a landfill permit” were required.
The message to be gleaned from these decisions is that a requirement for an additional environmental study later on does not relieve the Town Board from complying with its obligation to cause such a study to be done in the first instance. As held, this is for the purpose of guiding the Town Board in its preliminary actions. As one jurist has stated the requirement of 6 NYCRR 617.3 (k) requiring an environmental study at policy and planning stage is to assure "that environmental factors will not be severed from the over-all mix of policy concerns relevant to the decision to be made.” (Akpan v Koch, 152 AD2d 113, 142 [1st Dept 1989], dissenting opn of Murphy, P. J.)
Further, it appears in the Kirk-Astor decision (supra) that the Town Board there did in fact review and consider a project information form relative to environmental issues in the first instance. Nonetheless, the court held that such a form "failed to provide complete information relating to water table, soil, surface runoff, plant and animal life and other aspects of the proposed development.” (Supra, at 870 [emphasis added].) As a consequence the report which had been considered was held deficient and "in view of [those] deficiencies” the court concluded that the decision of the Town Board was arbitrary and capricious because the Town Board had predicated its decision on "the limited information before it.” (See, 106 AD2d, at 870 [emphasis added].)
It is crystal clear to this court that by its decision in Kirk-Astor (supra), the Justices of the Appellate Division, Fourth Department, require a Town Board to comply completely and without exception to the requirements of SEQRA and the regulations adopted in reference to that article. This court acknowledges that the decisions of the Fourth Department are binding on this court.
This court has reviewed the cases cited by the respondent, Town Board, and find them properly distinguishable from the *207 decision of Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd. (106 AD2d 868, supra) and Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, supra).
In Matter of Connell v Town Bd. (113 AD2d 359 [3d Dept 1985], affd on other grounds 67 NY2d 896) and Cross Westchester Dev. Corp. v Town Bd. (141 AD2d 796 [2d Dept 1988]) no specific plan or proposal for developing certain parcels under consideration to be annexed had been contemplated or discussed at the time the Town Board considered the annexation issue. Thus, the court held no environmental impact survey was required. In marked contrast in the case at bar we are not dealing with a speculative possibility of use of land. It is definitely contemplated by the Town Board of the Town of Ashford that the State-owned lands in that township will be used for the precise purpose of a low-level radioactive waste site.
The recent decision of Matter of Magee v Rocco (158 AD2d 53 [3d Dept 1990]) and Matter of Essex County v Executive Dept. (172 AD2d 970 [3d Dept 1991]) are properly distinguishable. In neither case had the respondent approved of any specific project or committed itself to any action. In Matter of Magee v Rocco (supra), the Town Board had adopted an "advisory document” of a master plan for future zoning. In Matter of Essex County v Executive Dept. (supra), a Commission on the Adirondacks had proposed a report recommending certain action but not committing to such action. In fact the Commission was not empowered to take any action.
In contrast to the two cases cited the action of the Town Board of Ashford is more than a "mere advisory document” or "guide.” It is the very basis on which the State’s proposed legislation is granted. More importantly by conditioning its consent to the removal of the current prohibition against locating the low-level radioactive site at Ashford on a specific economic benefits package, the Town Board has committed itself to a definite course of action, to wit: to agree not to oppose any future steps of the State Legislature in eliminating the current prohibition against locating the low-level radioactive waste facility in the Town of Ashford but also to take certain enumerated actions in the township if the State fulfills a compensation and benefits package. In brief, the township is committed to future developmental projects in the township as well as is the State.
Finally, the respondent, Town Board, argues that since the *208 State owns the land on which the proposed low-level radioactive waste site is to be located, and since the Town of Ashford cannot control or regulate State lands, the preparation of an environmental impact study would be an academic exercise.
Such argument in the opinion of this court ignores the purpose of an environmental study. Its purpose isn’t to regulate land. Its purpose is to gather and glean information of the effect, if any, certain proposed action will have upon the environment. The environmental effect of a proposal upon the real and personal property located in the town and adjacent towns and communities as well as upon the persons living in those areas is the heart of such a study. In sum, it is required for the purpose of gathering information that will be helpful in guiding the residents and the town officials in reaching at least an informed if not an intelligent decision on matters pertaining to the environment.
Further while it is generally true that the State and its lands are exempt from local regulatory authority, there are exceptions to the broad principle.
In order to be exempt the State must be performing "a governmental, as distinguished from a proprietary, function.” (Matter of Washington County Cease v Persico, 99 AD2d 321, 324 [3d Dept 1984], affd 64 NY2d 923.)
Secondly, the exemption to local regulatory authority is inapplicable if the State voluntarily subjects itself to local regulatory control. Thus in Matter of Washington County Cease v Persico (supra), the court determined that the State had subjected itself to local zoning through legislation. Similarly in Hendrickson Bros. v Town of Babylon (40 NY2d 899 [1976]) the court held that the County of Suffolk, a subdivision of the State had subjected itself to comply with town ordinances for the installation of sewer lines since the county had adopted the town’s ordinances in its sewer installation contract. Again in Matter of Ibero-American Action League v Palma (47 AD2d 998) our Fourth Department, Appellate Division held that the State Mental Hygiene Law was subject to local regulations for the construction of drug rehabilitation centers because the State regulations that had been promulgated under the State act provided for compliance with "local laws, ordinances, rules, regulations and orders pertaining to health, welfare and safety.”
While the petitioners have argued in their supplemental brief that the proposed legislation by the State falls within *209 both of the noted exceptions, this court declines to pass upon such issues. This is for the reasons first that the court is of the opinion that such issues are not encompassed within the proceeding which has been brought and for the further reason that the violations alleged are premature since the State has not enacted the proposed legislation. If enacted as proposed this court is of the opinion that further litigation will undoubtedly ensue.
For all of the reasons stated the petition is granted; the resolution of the Town Board of Ashford adopted on July 10, 1991 is annulled; and the matter is remitted to the Town Board to make a proper determination of environmental significance as the determined applicable regulations provided.