█ In the Matter of BATDORJ DAGVADORJ, Appellant, v LOIS DEFLEUR, as Administrator at the State University of New York at Binghamton, et al., Respondents. [896 NYS2d 211]—

Kavanagh, J. Appeal from a judgment of the Supreme Court (Garry, J.), entered September 24, 2008 in Madison County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review respondents' determination finding that petitioner had violated the conditions of his F-1 nonimmigrant visa and was no longer in valid F-1 status.

In the fall of 2005, petitioner, a citizen of Mongolia, was residing in the United States pursuant to a student visa that allowed him to pursue a Master's degree in electrical engineering while enrolled at respondent State University of New York at Binghamton (hereinafter SUNY Binghamton).[1] The F-1 visa permitted petitioner, in addition to his studies, to engage in "employment as has been authorized" pursuant to applicable federal regulations (8 CFR 214.1 [e]; see 8 CFR 214.2 [f] [9]). During intermittent periods beginning in March 2006, petitioner, while a student at SUNY Binghamton, was employed as a mathematics and physics tutor at the Academic Support

---

1. Petitioner entered the United States in 2000 as a high school exchange student and has since earned Associate's, Bachelor's and Master's degrees in the state educational system.

Center of the State University of New York at Morrisville (hereinafter SUNY Morrisville). Sometime later, in March 2007, petitioner was notified by a representative of SUNY Binghamton's Office of International Student and Scholar Services (hereinafter ISSS) that his employment as a tutor at SUNY Morrisville constituted off-campus work and, since he had not received prior authorization to accept this position, he was in violation of his visa status. Respondent Ellen Badger, director of SUNY Binghamton's ISSS office and the official charged with insuring that nonimmigrant students attending SUNY Binghamton fully complied with the terms of their visas, met with petitioner and his attorney regarding his employment at SUNY Morrisville and, after the meeting, concluded that petitioner, by accepting this position without prior authorization, had violated the terms of his visa. Badger also found that she was obligated by federal regulations to report this matter to the Department of Homeland Security (*see* 8 CFR 214.3 [g] [2] [ii]).[2] Petitioner thereafter commenced this CPLR article 78 proceeding challenging the determination that he was in violation of his F-1 visa status as being arbitrary, capricious and in violation of his right to due process under both the federal and state constitutions. Supreme Court dismissed the petition, prompting this appeal.

Petitioner essentially makes three claims in this proceeding. First, he argues that his work at SUNY Morrisville did not constitute off-campus work that required prior authorization by Badger, SUNY Binghamton's designated school official (hereinafter DSO) (*see* 8 CFR 214.3 [a] [1] [ii]; 214.2 [f] [9] [ii]). Second, he claims that even if such authorization were required, he was deprived of due process by the method employed by Badger in determining that he had violated the terms of his visa and, third, he only accepted this position after receiving assurances from his academic advisors that led him to conclude that he could do so without compromising his nonimmigrant student status or violating the terms of his F-1 visa.

An alien may be granted a visa to enter the United States if he or she "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study consistent with [8 USC § 1184 (*l*)] at an established college, university, . . . or other academic institution" (8 USC § 1101

---

**2.** Badger also determined that petitioner was no longer eligible to engage in optional practical training that allowed a nonimmigrant student to remain in the United States for a period of time after graduation to work in his or her field (*see* 8 CFR 214.2 [f] [10] [ii]).

[a] [15] [F] [i]; *see* 8 CFR 214.1 [a] [2]). Schools that seek to admit such students must participate in the Student and Exchange Visitor Program and agree to maintain detailed records on each student that are transmitted electronically through the Student and Exchange Visitor Information System (hereinafter SEVIS) to the Department of Homeland Security (*see* 8 CFR 214.3 [g]; *see also* 8 CFR 214.2 [f] [1] [iii]). A school's DSO is responsible for monitoring each student's progress in the program and for reporting to the Department of Homeland Security any violation by a student of their visa status within 21 days (*see* 8 CFR 214.3 [g] [2] [ii]). Failure to fully comply with these regulations puts at risk the school's eligibility to participate in this program (*see* 8 CFR 214.3 [h] [2]), as well as its ability to obtain certain federal funding and grants (*see* 15 USC § 7410 [c]).

A nonimmigrant student participating in this program can seek employment "on-campus" without prior approval of the school's DSO (*see* 8 CFR 214.2 [f] [9] [i]), but that employment must be performed on the school's campus or at an off-campus location that is "educationally affiliated with the school" (8 CFR 214.2 [f] [9] [i]). Apart from an exception not relevant here (*see* 8 CFR 214.2 [f] [9] [ii] [C]), a student who seeks employment that is not considered "on-campus" employment, may only do so if the position involves "[c]urricular practical training" that is "an integral part of an established curriculum" and has been authorized by the school's DSO (8 CFR 214.2 [f] [10] [i]).[3]

Initially, we reject petitioner's contention that the determination that his tutoring position at SUNY Morrisville did not constitute "on-campus" employment—and, therefore, required prior approval from SUNY Binghamton's DSO—was arbitrary, capricious, an abuse of discretion or "affected by an error of law" (CPLR 7803 [3]; *see Hughes Vil. Rest., Inc. v Village of Castleton-on-Hudson*, 46 AD3d 1044, 1046-1047 [2007]; *Matter of Martinez v State Univ. of N.Y.-Coll. at Oswego*, 13 AD3d 749, 750 [2004]; *Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 993 [1999]). The tutor position could not have been on-campus employment as SUNY Morrisville—the place where petitioner was employed—is located almost 70 miles from the SUNY Binghamton campus. Further, the position that petitioner accepted does not appear to have

---

**3.** Curricular practical training has been defined as "alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school" (8 CFR 214.2 [f] [10] [i]).

any educational affiliation with SUNY Binghamton's curriculum in a manner contemplated by these regulations (*see* 8 CFR 214.2 [f] [9] [i]). While it is true, as petitioner contends, that both SUNY Binghamton and SUNY Morrisville are part of the SUNY system, they are, in fact, separate and distinct educational institutions with "differentiated and designated missions" (Education Law § 351). Given this reality, we cannot say that the determination regarding the off-campus nature of this employment was without a rational basis in the record.

Petitioner also claims that respondents deprived him of due process by the method it employed in determining that he had violated the terms of his visa status. In that regard, petitioner argues that he has a constitutionally protected interest in his visa status and that his right to due process was violated because he was not given adequate notice of the need for prior authorization or a meaningful opportunity to be heard before this determination regarding his visa status was actually made. Petitioner also challenges the dual role played by Badger in investigating his employment and then making a determination based upon findings of that investigation that he had violated his visa status.

Initially, we note that prior to bringing this proceeding, petitioner commenced an action in federal court based upon the same facts that are at issue in this proceeding. After that action was dismissed, an appeal was taken in which the District Court's determination that petitioner had received due process was affirmed (*see Dagvadorj v Badger*, 2009 WL 2171314, \*1, 2009 US App LEXIS 15983, \*2-3 [2d Cir 2009]). Given that petitioner's claims in this proceeding regarding his federal due process rights are identical to those made in the federal litigation, he is bound by the result reached in that action and is estopped from raising those claims in this proceeding (*see Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349-350 [1999]; *see generally Murray v City of New York*, 51 AD3d 502, 503-504 [2008], *lv denied* 11 NY3d 703 [2008]).

We do not arrive at the same conclusion as to petitioner's state due process claims, which were dismissed in the federal action but clearly not addressed. However, in regard to those claims, we note that petitioner does not have a constitutionally protected liberty interest in his F-1 visa status or an "inherent property right" in his visa (*see Azizi v Thornburgh*, 908 F2d 1130, 1134 [2d Cir 1990]). Even if petitioner had such an interest, his claim that Badger "effectively took" it away ignores the fact that Badger is a state official who does not have the power to revoke a visa. Her position involves monitoring the activities

of nonimmigrant students under her charge and requires her to notify federal authorities if such a student has violated his or her visa status (*see* 8 CFR 214.3 [g] [2] [ii]). She has no choice but to make this notification and has no role as to what impact, if any, such a notification will have on the student's visa status.

Petitioner's claim that he was not on notice of the need for such prior authorization is belied by the record. Before accepting this position, petitioner received a series of e-mails from Badger during the relevant time period that indicated that he needed prior authorization from her department. In one e-mail, petitioner was informed that "you cannot work at Morrisville unless your SEVIS record is updated by the Help Desk, AND *you obtain work authorization for the tutorial work through our office*" (emphasis added). One month later, petitioner was again advised that he was not "eligible to work anywhere else without meeting the eligibility requirements and *obtaining appropriate work authorization from our office*" (emphasis added).

Petitioner also argues that he was entitled to a hearing before Badger decided that he was in violation of his visa status. However, petitioner and his counsel were given an opportunity to meet with Badger to present evidence as to why employment at SUNY Morrisville did not require prior written authorization and why, by accepting this position, he had not violated the terms of his visa. Only after this meeting had taken place did Badger reach a final determination on this issue and notify the Department of Homeland Security that petitioner was, in fact, in violation of the terms of his visa.

As for Badger's role in this process, we note that merely because she investigated and then made a judgment based upon the findings of this investigation regarding petitioner's visa status does not, in and of itself, violate petitioner's right to due process (*see Withrow v Larkin*, 421 US 35, 58 [1975]; *Karpova v Snow*, 497 F3d 262, 271 [2d Cir 2007], *cert denied sub nom. Karpova v Paulson*, 553 US —, 128 S Ct 2483 [2008]). There is no indication that the regulatory scheme outlining the DSO's responsibilities and functions in this regard created a conflict that was " 'inherently incompatible with procedural due process' " (*Matter of Vinci v Corbisiero*, 174 AD2d 893, 895 [1991], quoting *Matter of Washington County Cease v Persico*, 99 AD2d 321, 329 [1984], *affd* 64 NY2d 923 [1985]).

Finally, petitioner claims that prior to accepting this position, he received assurances from his academic advisors at SUNY Binghamton and SUNY Morrisville that he could accept this position as a tutor, and that respondents, given the existence of these assurances, should be estopped from determining that he

was in violation of his visa status. Equitable estoppel "is not available against a governmental agency in the exercise of its governmental functions" (*Matter of Daleview Nursing Home v Axelrod*, 62 NY2d 30, 33 [1984]) unless the factual situation, as presented, requires the invocation of estoppel to "prevent injustice" (*Matter of E.F.S. Ventures Corp. v Foster*, 71 NY2d 359, 369 [1988]; *see Delaware County Dept. of Social Servs. v Pontonero*, 31 AD3d 999, 1001 [2006]; *Town of Oneonta v City of Oneonta*, 191 AD2d 891, 892 [1993]). While there is no doubt that petitioner relied on assurances he received from his supervisor at SUNY Morrisville that he could accept this position if it was approved by his academic advisor at SUNY Binghamton, he was never specifically told that he did not need prior authorization from SUNY Binghamton's DSO. In fact, petitioner has never denied being aware that any employment off the SUNY Binghamton campus presented special problems in regard to his visa status, all of which had to be addressed before he could accept such employment. Equally important, he has failed to establish that respondents ever misled him regarding the need for prior approval by the DSO or that his reliance on these communications with his academic advisors was, under all of the circumstances, reasonable (*see Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326-327 [2006]). Moreover, regardless of what petitioner may have been told by these SUNY officials, respondents were obligated by federal regulation to inform the Department of Homeland Security that a nonimmigrant student had engaged in off-campus work without authorization in violation of his visa status (8 CFR 214.3 [g] [2] [ii]).

To the extent not specifically addressed herein, petitioner's remaining claims have been reviewed and found to be lacking in merit.

Cardona, P.J., Peters, Rose and McCarthy, JJ., concur. Ordered that the judgment is affirmed, without costs.