OPINION OF THE COURT
Hancock, Jr., J.
 We granted petitioner leave to appeal in order to address a question pertaining to standing: whether an owner of property which is the subject of a zone change must plead specific environmental harm to challenge the sufficiency of an agency’s efforts to comply with SEQRA. We hold that where, as here, the very subject of the proposed action (ECL 8-0105 [4]) is petitioner’s property, petitioner is presumptively adversely affected by the violation of SEQRA requirements and that no such specific allegation is necessary (see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d *527 406, 413-414, 415-416). Although we differ with the Appellate Division on this standing issue, we agree with its determination on the merits that the agency "complied with the mandates of SEQRA” (145 AD2d 562, 563). Accordingly, there should be an affirmance.
I
Petitioner is the owner of three parcels of land totaling approximately 60 acres in the Town of Brookhaven. From 1971 until January 1987 all three parcels had a zoning classification which permitted commercial use. In September 1986 petitioner entered into a contract to construct a 45,000 square foot supermarket on the largest parcel. On December 2, 1986 respondent town held a public hearing to determine whether all three parcels should be rezoned for residential use. After the hearing but before taking any action on the proposed zone change, the town, acting as lead agency,* completed and filed a "negative declaration” (see, 6 NYCRR 617.2 [y]) — an environmental assessment form concluding that the proposed action would not result in any significant adverse environmental impact. On January 20, 1987 the town board voted to approve the rezoning plan.
Petitioner commenced an action seeking a judgment declaring the rezoning of its property to be void and directing the town to issue a permit for the construction of the supermarket. After converting the declaratory judgment action to an article 78 proceeding, Supreme Court granted respondent’s motion to dismiss. The court held that petitioner lacked standing to raise a SEQRA-based challenge grounded solely on its allegations of unspecified "eventual environmental consequences” and that, in any event, respondent had complied with the requirements of SEQRA. The Appellate Division agreed with Supreme Court’s holdings both on standing and on the merits of the SEQRA challenge.
II
It is established law that to be entitled to seek judicial review of an administrative determination, the petitioning party "must have a legally cognizable interest that is or will *528 be affected by the * * * determination” (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413, supra). A showing of special damage or actual injury is not always necessary to establish a party’s standing (id., at 413). In some instances, the party’s particular relationship to the subject of the action may give rise to a presumption of standing (id., at 413). Thus, in Sun-Brite Car Wash, we held that adjacent property owners, as "members of a group presumptively affected by the [action]” (id., at 415-416), had standing to challenge the village board’s grant of a zoning permit for a radio tower without showing the likelihood of any actual resultant harm.
In applying these general rules to the claim of a SEQRA violation, the distinctive characteristics of the SEQRA statutory scheme and the particular function of the courts in reviewing the adequacy of SEQRA compliance must be kept in mind. SEQRA is designed to promote "efforts which will prevent or eliminate damage to the environment and enhance human and community resources” (ECL 8-0101) by injecting "environmental considerations directly into governmental decision making; thus the statute mandates that '[s]ocial, economic, and environmental factors shall be considered together in reaching decisions on proposed activities’ (ECL 8-0103 [7]; see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 415; Governor’s Mem, 1975 NY Legis Ann, at 438).” (Matter of Coca-Cola Bottling Co. v Board of Estimate, 72 NY2d 674, 679 [emphasis added]; see, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 206.)
To assure that those charged with decision-making responsibility are aware of their obligations "to protect the environment for the use and enjoyment of this and all future generations” (ECL 8-0103 [8]), SEQRA establishes detailed procedures requiring them to consider the potentially harmful effects of a proposed action (see, Matter of Coca-Cola Bottling Co. v Board of Estimate, supra, at 679). Thus, the lead agency "must initially determine whether a proposed action may have a significant effect on the environment (ECL 8-0109 [2], [4]; 6 NYCRR 617.2 [v]). If no significant effect is found, the lead agency may issue a 'negative declaration,’ identifying areas of environmental concern, and providing a reasoned elaboration explaining why the proposed action will not significantly affect the environment (6 NYCRR 617.6 [g]).” (Id., at 680.)
In reviewing a lead agency’s compliance with SEQRA, a *529 court does not "weigh the desirability of [the] action” (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416) or determine what, if any, adverse environmental effects may result from it. Indeed — as contrasted, for example, with a court’s review of the grant or denial of a variance or special permit — the merits of the action and its ultimate impact on the petitioning party or others are not in question. The limited issue for review is whether the decision makers identified the relevant areas of environmental concern, took a "hard look” at them, and made a "reasoned elaboration” of the basis for their determination (id., at 417).
In deciding whether an owner has standing to ask a court to review SEQRA compliance, the question is whether it has a significant interest in having the mandates of SEQRA enforced. An owner’s interest in the project may be so substantial and its connection to it so direct or intimate as to give it standing without the necessity of demonstrating the likelihood of resultant environmental harm. For even though such an owner cannot presently demonstrate an adverse environmental effect, it nevertheless has a legally cognizable interest in being assured that the decision makers, before proceeding, have considered all of the potential environmental consequences, taken the required "hard look”, and made the necessary "reasoned elaboration” of the basis for their determination.
Under these rules, we hold that this property owner has a legally cognizable interest in being assured that the town satisfied SEQRA before taking action to rezone its land. In reaching this conclusion, we need not delimit the parameters of the zone of interest in SEQRA compliance or define the precise nexus with the proposed action that a party must demonstrate in order to object for failure of compliance. It seems evident that if any party should be held to have a sufficient interest to object — without having to allege some specific harm — it is an owner of property which is the subject of a contemplated rezoning. Here, apparently only the owner of the affected property has a sufficient incentive to bring a review proceeding. To adopt the rule urged by respondent and deny standing — absent an allegation that the owner will suffer some adverse environmental consequence — would insulate decisions such as this from judicial review, a result clearly contrary to the public interest.
Respondent argues, however, that petitioner can have no *530 standing because the action here is "up-zoning” from a commercial use to a less intense residential use. The argument misses the point that in reviewing a SEQRA determination, the court is solely concerned with the procedural and substantive mandates of SEQRA, not with the ultimate environmental consequences of the proposed action (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416-417, supra). Also beside the point are respondent’s protestations that the true motive for petitioner’s objection is its desire to proceed with its planned supermarket, not its concern with the town’s adherence to SEQRA. That petitioner concededly has an economic interest in the outcome does not negate the standing that it otherwise has by virtue of its status as owner of the property (see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d, at 415, supra; Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211, 215-216).
Ill
Having concluded that petitioner has standing, we briefly address its contention that the town’s negative declaration is inadequate. In reviewing the issuance of a negative declaration our task is to determine whether the agency "made a thorough investigation of the problems involved and reasonably exercised [its] discretion (Matter of Cohalan v Carey, 88 AD2d 77, 79, appeal dismissed 57 NY2d 672; H.O.M.E.S. v New York State Urban Dev. Corp. [69 AD2d 222], 231).” (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 364; see, Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 338-341.) In making such review, the agency’s obligations under SEQRA "must be viewed in light of a rule of reason.” (Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417, supra.) The degree of detail will obviously vary with the nature of the proposal and the agency’s determination will be annulled "only if arbitrary, capricious or unsupported by substantial evidence” (id., at 417). In assessing the adequacy of the negative declaration here, we agree with the Appellate Division that "the Town Board identified the relevant areas of environmental concern, took a hard look at them and made a 'reasoned elaboration’ (6 NYCRR 617.6 [g] [2] [iv]) for the basis of its determination” (145 AD2d, at 563).
Finally, we reject petitioner’s contention that the negative declaration should be considered a nullity because it was not completed and filed before the public hearing. SEQRA *531 prescribes that the required environmental review be made before the agency acts (see, Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41, 46-47; Matter of Di Veronica v Arsenault, 124 AD2d 442, 444). Here, the agency’s action was the town board’s approval of the rezoning. The negative declaration was issued prior to that action and was, thus, timely.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order affirmed, with costs.

 Under SEQRA and its implementing regulations, a lead agency is defined as the government entity "principally responsible for carrying out, funding or approving” the proposed action (ECL 8-0111 [6]; 6 NYCRR 617.2 M).