OPINION OF THE COURT
John J. Ark, J.
After 18 months of devisive debate about the future of their police department, the Town of Wheatland voters elected two board members and a supervisor who stood for its abolition. Upon taking office in January 1994, the Town Board, by a three to two vote, immediately approved the Wheatland Police Department for only three months. On March 3, 1994 the Town Board proposed, and on March 30, 1994 passed, Local Laws, 1994, No. 1 of the Town of Wheatland abolishing the Wheatland Police Department as of June 1, 1994.
This action was brought pursuant to CPLR article 78 and as a declaratory judgment seeking to set aside and annul the decision of the Wheatland Town Board pursuant to Local Laws, 1994, No. 1. The petitioners, which include the Wheat-land Police Chief and 41 residents of the Town, allege the Town Board acted improperly by:
(1) not procedurally complying with the appropriate provisions of the State Environmental Quality Review Act (SEQRA) and by failing to consider the "socio-economic effect” of the local law;
(2) acting arbitrarily and capriciously;
(3) failing to comply with the requirements of the Municipal Home Rule Law;
(4) not referring the local law to a referendum; and
(5) one of the board members voting in favor of Local Laws, 1994, No. 1 not being a resident of the Town of Wheatland at the time of the vote.
In rejoinder, the respondents deny the allegations of the petition and questioned whether the petitioners have standing to bring the action.
STANDING
As set forth in Matter of Har Enters. v Town of Brookhaven (74 NY2d 524, 527-528), "It is established law that to be entitled to seek judicial review of an administrative determination, the petitioning party 'must have a legally cognizable *410 interest that is or will be affected by the * * * determination’ (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413, supra). A showing of special damage or actual injury is not always necessary to establish a party’s standing.”
Unlike a zoning matter, the abolition of a town police department is all pervasive. To require a showing of special damage or actual injury to one resident vis-á-vis another is unlikely and counteracts the intent of SEQRA, which is to assure that those charged with decision-making responsibility are aware of their "obligation to protect the environment for the use and enjoyment of this and all future generations” (ECL 8-0103 [8]). Furthermore, to deny standing in this matter would be to insulate governmental action from scrutiny (see, Society of Plastics v County of Suffolk, 77 NY2d 761, 785). In a matter affecting a town-wide service, either all residents have standing, or none. In this matter, any resident of the Town of Wheatland has standing.
RESIDENCE OP BOARD MEMBER MILLER
After a hearing before the court on May 11, 1994, it was determined that Board Member Jack Miller was a resident of the Town on and before March 30, 1994 and is so today.
MUNICIPAL HOME RULE LAW
Other than the SEQRA aspects as set forth below, the passage of Local Laws, 1994, No. 1 was procedurally adequate.
SEQRA COMPLIANCE-PROCEDURAL
On May 7, 1994 this court preliminarily decided that although it was not required to do so, the Wheatland Town Board had inadvertently grafted onto the March 30, 1994 negative declaration the necessity of a public hearing on the controversy surrounding the abolition of the Town of Wheat-land Police Department.
The negative declaration, upon which the public may rely, was not made public until March 30, 1994. Paragraph (6) states: "It is anticipated that there will be controversy surrounding the abolition of the Town of Wheatland Police Department. This controversy surrounds the issue of whether the Town of Wheatland Police Department is duplicative of *411 police services which are or could be provided by the Monroe County Sheriff Department and the financial impacts of the proposal to abolish the Town of Wheatland Police Department. Prior to the action, however, a public hearing must be held on the proposed Local Law. The public hearing will offer ample opportunity to air the public’s concern. It is unlikely that there will be controversy surrounding the issue of whether the proposed action might have a significant impact on the environment” (emphasis added).
Although the public hearing referred to is possibly that required by the Municipal Home Rule Law, a person reading paragraph (6) for the first time on or after March 30, 1994, could reasonably have believed that the public hearing was prospective. The failure of the Town to have a public hearing after March 30, 1994 made incomplete the SEQRA process, the negative declaration and the promulgation of Local Laws, 1994, No. 1. Accordingly, the court stayed any further implementation of Local Laws, 1994, No. 1 until a public hearing as set forth in paragraph (6) was completed, failing which the negative declaration and Local Laws, 1994, No. 1 would have been nullified.
On May 24, 1994, the Town Board held the court-mandated hearing.
The petitioners maintain that the Wheatland Town Board has failed to follow Town Board Resolution No. 28, adopted on February 15, 1979, which set forth the procedures to be followed whenever the Town of Wheatland undertook, funded or permitted an action. Resolution No. 28 set forth that "the Building Inspector shall make the initial determination” of the type of action. From there "the Town Planning Board shall act as the Lead Agency for any action subject to SEQR which requires only local approval”. However, in the instant matter Resolution No. 28 transgresses both SEQRA policy and its language by removing the initial determination of the environmental effect of a project from the ambit of the agency principally responsible for approving the proposal. (See, Matter of Coca-Cola Bottling Co. v Board of Estimate, 72 NY2d 674, 680.)
Since the Town Board is " 'principally responsible for carrying out, funding or approving’ ” the action abolishing the police department, it is both the appropriate and only possible lead agency, thereby fulfilling the SEQRA policy of having the ultimate decision maker assess environmental effects. (Supra.)
*412 SEQRA COMPLIANCE-SUBSTANTIVE
It must now be reviewed whether the Town Board, as lead agency, by issuing a negative decision, "determine^] either that there will be no environmental effect or that the identified environmental effects will not be significant” (6 NYCRR 617.6 [g] [1] [ii]) and did the Town Board "take a hard look at all relevant impacts * * * in making this decision and document its reasons in writing.”
Those supporting the retention of the police department provided the Town Board with reports, letters and testimony which raised questions as to the environmental, economic and social effects on the community. In addition, there existed a thorough and comprehensive task force report supporting the retention.
In response, the Town Board undertook the following steps:
(1) The Town solicited comments from all the Town Supervisors in Monroe County who relied on the Monroe County Sheriff’s Department for their police services. The request for information specifically related to questions concerning response time, community involvement, professionalism and effectiveness.
(2) The Town contacted the Monroe County Sheriff’s office and requested information concerning its ability to provide police services to the Town of Wheatland. Sheriff Andrew Meloni, in part, stated: "I am confident that the Monroe County Office of Sheriff has all the necessary resources to provide professional, effective and efficient services to the Town of Wheatland.”
(3) The Supervisor conducted a review of crime statistics, the capacity of Monroe County Sheriff’s office, the degree of activities of various districts of the Monroe County Sheriff’s office and the ability of the Monroe County Sheriff to handle the Town of Wheatland. The Town of Wheatland invited the public to comment on issues including environmental significance of the proposed action and heard all parties wishing to address the issue and received and filed all documents concerning this subject. The Town Board also held a public informational meeting on March 1, 1994 at which the public addressed questions to Undersheriff O’Flynn.
The court’s role in reviewing SEQRA determinations is to, first, review the agency procedures to determine whether they were lawful. As set forth above, the only procedural defect, an inadvertent reference to a hearing, has been satisfactorily resolved. Second, courts may review the record to determine *413 whether the agency identified the relevant areas of environmental concern, took a "hard look” at them, and made a "reasoned elaboration” of the basis for its determination. When doing so the courts are to remember that an agency’s substantive obligations under SEQRA must be viewed in light of a rule of reason. Although agencies have considerable latitude in evaluating environmental effects and choosing among alternatives, "[n]othing in the law requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency’s choice, which can be annulled only if arbitrary, capricious or unsupported by substantial evidence” (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417). Even more specifically, "in reviewing the issuance of a negative declaration [the court’s] task is to determine whether the agency 'made a thorough investigation of the problems involved and reasonably exercised [its] discretion’ ” (Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 530 [1989], supra).
The petitioners posit that SEQRA requires the Town Board to consider the "socio-economic effect” of Local Laws, 1994, No. 1 and that further study was necessary. Contrariwise, the Town maintains that its negative declaration obviates this necessity and that the only area of concern is whether Local Laws, 1994, No. 1 would result in the impairment of existing community or neighborhood character. Regardless, the parties’ cumulative record sets forth sufficient information upon which to review both the "socio-economic” and impairment issues. There is substantial evidence in the record to support the Town Board’s conclusion that the abolition of the Wheatland Police Department will not have a significant adverse environmental impact, whether socio-economic or impairing. As well, petitioners have not established other than by generalized complaints that the abolition will have a negative social and/or economic effect on the community. (See, Matter of WEOK Broadcasting Corp. v Planning Bd., 79 NY2d 373, 379.) In assessing the adequacy of the negative declaration, the court finds that the Wheatland Town Board identified the relevant areas of environmental concern, took a hard look at them and made a " 'reasoned elaboration’ ” for the basis of its determination. (See, Akpan v Koch, 75 NY2d 561, 570.)
REFERENDUM
A referendum might have alleviated the lingering animosity caused by the extraordinary and harshly implemented *414 act of abolishing the Wheatland Police Department. However, a local law abolishing a police department is not enumerated in either Municipal Home Rule Law §23 or §24, thereby precluding the possibility of either a mandatory or permissive referendum. (See, 1991 Opns St Comp No. 91-58.) An advisory referendum would be improper and without effect and municipal funds may not be expended for such purposes. (Supra.)
ARBITRARY AND CAPRICIOUS
Considering its extensive experience with and regard for local police, this court does not necessarily agree with the Board’s abolition of the police department. However, it cannot be said that the Board’s actions, as set forth in the legislative findings, are unsupportable or were arbitrary or capricious. Ultimately, in the representative democracy of Wheatland, New York, the wisdom of the abolition of the police department by the Town Board can be reviewed by the voters on November 7, 1995.