OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner in the instant CPLR article 78 proceeding seeks to annul the award of certain cable franchise renewal agreements between the City of New York and Time Warner Cable of New York City (Time Warner), and between the City of New York and Cablevision Systems of New York City Corporation (Cablevision). Prior to the instant determinations Time Warner had been awarded, and controlled, seven of nine cable franchises in New York City. Cablevision controlled two of the nine cable franchises.[1] All franchises were due to expire on October 19, 1998. In brief, petitioner argues that the renewal of the cable franchise agreements by the Giuliani Administration, and their subsequent approval by the respondent Public Service Commission (PSC), are unlawful by reason that the franchise agreements were not first reviewed and approved by the petitioner. Respondents, on the other hand, take the position that not only was petitioner’s approval not required, but that it was specifically prohibited under the provisions of the New York City Charter.
The petition alleges, inter alia, that in 1998 the Giuliani Administration, through the various municipal respondents (hereinafter referred to collectively as City respondents), embarked upon a deliberate plan to avoid petitioner’s legislative oversight with regard to renewal of the Time Warner and Cablevision franchises. This scheme purportedly involved efforts to (in petitioner’s words) “stonewall” the petitioner with respect to its attempts to obtain information in connection with the status of the franchise renewals, and to generally exclude the petitioner from the review/approval process. Petitioner alleges, inter alia, that the approval granted by the PSC on July *232 15, 1999 abrogated (as noted) the New York City Charter, and violated PSC rule 591.3 (c), which specifically requires approval of franchise agreements by the “local legislative body” of the municipality (see, 9 NYCRR 591.3 [c]).
The petition contains three causes of action. The first cause of action, against the City respondents, alleges that the approval of the franchise renewal agreements violated the New York City Charter, various provisions of the Public Service Law, and PSC rule 591.3 (c). The second cause of action, against the PSC, alleges that the PSC unlawfully denied the petitioner its right to approve the cable franchise agreements. The third cause of action, against the PSC, alleges that the PSC failed to properly review the merits of the franchise renewal applications, particularly with reference to the educational and governmental channels, to ascertain whether the agreements were in the public interest. Petitioner seeks judgment annulling the PSC determinations and a judgment declaring that the cable franchise renewal agreements are null and void. In addition, petitioner seeks an order to compel the City respondents to submit the franchise agreements to the petitioner for approval.
Notably, the approval of cable franchises in New York City involves application of a number of multilayered Federal, State and local statutory and regulatory provisions. These include, in addition to the New York City Charter, title VI of the Federal Communications Act of 1934 (see, 47 USC § 521 et seq.), article 11 of the Public Service Law, and 9 NYCRR subtitle R (regulations of NY State Commn on Cable Television),
Under New York City Charter § 363, the provision which governs the award of City franchises, the initial determination of need for a particular type of franchise is made by the head of the City agency responsible for the particular activity, in this instance the Department of Information Technology and Telecommunications (see, NY City Charter § 363 [b] [DoITT]). Once such a determination is made, the agency (with the advice of, inter alia, the Corporation Counsel) must prepare a proposed authorizing resolution which is then submitted to the Mayor (NY City Charter § 363 [b]). The proposed authorizing resolution is required to set forth the nature of the franchise, the public service to be provided, the terms and provisions of the franchise, the method by which proposals shall, be solicited, and, the criteria to be used in evaluating the proposals submitted in response to a solicitation (see, NY City Charter § 363 [b]). The Mayor may thereafter submit the proposed authoriz *233 ing resolution to the Council which may approve, modify or disapprove it (see, NY City Charter § 363 [c]). The Mayor may veto any modification or disapproval of the authorizing resolution, but the Council may vote to override the veto (see, NY City Charter § 363 [c]). Once an authorizing resolution has been adopted, it is referred to the responsible agency (again, in this instance, DoITT) which may issue requests for proposals (see, NY City Charter § 363 [e]). The selection of a franchisee is subject to the review and approval of the City Franchise and Concession Review Committee (FCRC) (see, NY City Charter § 363 [f]). After local governmental approval, the franchise agreements are required to be submitted to the PSC for review (see, 9 NYCRR 591.3). New York City Charter § 363 (d) contains the following provision: “No authorizing resolution or other action of the council may provide for any involvement by the council or any member of the council in the selection of a franchise pursuant to such resolution.”
On October 13, 1993, pursuant to New York City Charter § 363 (b), the petitioner adopted an authorizing resolution (resolution 1639 of 1993) for the approval of cable television franchises. The resolution, which expired on October 13, 1998, authorized the Department of Telecommunications and Energy (predecessor to DoITT) to grant nonexclusive franchises for the provision of cable television services. The City subsequently entered into cable television franchise agreements with Time Warner and Cablevision. The agreements were reviewed and approved, at that time, by the PSC.
In August 1998 petitioner allegedly learned for the first time that the FCRC intended to entertain and approve the renewal applications of the Time Warner and Cablevision franchises without first requiring review of the renewal applications by the petitioner. The FCRC scheduled a public hearing on the Time Warner renewal applications for September 14, 1998, with a vote to be taken thereon on September 16, 1998. Petitioner obtained a temporary restraining order (TRO) enjoining the City from approving the franchise agreements on September 16, 1998, but the TRO was modified on the same day by a Supreme Court Justice of the First Department, Appellate Division. The modification, which was only in relation to the Time Warner renewals, authorized the FCRC to vote upon the Time Warner agreements. It also allowed the agreements to be executed, and permitted them to be referred to the PSC. Following modification of the TRO, the FCRC voted upon, and approved, the Time Warner agreements. Pursuant to a *234 similar court order (dated Oct. 1, 1998) the FCRC was permitted to approve the Cablevision renewal agreements, which were then executed and referred to the PSC.
In separate orders issued July 15, 1999 the PSC approved renewals of the Time Warner and Cablevision franchises.
Discussion
Authority of City Council
Prior to addressing the issues raised by the parties the court must first note that in dealing with matters of statutory construction and/or legislative interpretation, “ ‘[w]here the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists’ ” (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674 [1988]; see also, Matter of Judge Rotenberg Educ. Ctr. v Maul, 91 NY2d 298, 303 [1998]). “ ‘Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute’ ” (Doctors Council v New York City Employees’ Retirement Sys., supra, at 674). “ ‘[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 107 [emphasis supplied], quoting Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208, and citing Doctors Council v New York City Employees’ Retirement Sys., supra). Nonetheless, the literal language of a statute will not always be controlling where it contravenes the legislative intent or leads to an unreasonable result (see, Council of City of N. Y. v Giuliani, 93 NY2d 60, 69 [1999]; Matter of Rosen v Assessor of City of Troy, 261 AD2d 9, 11-12 [3d Dept 1999]).
The court is mindful that a court’s role in reviewing an administrative determination is not to substitute its judgment for that of the agency (see, Akpan v Koch, 75 NY2d 561, 571), but simply to ensure that the agency followed lawful procedures and that the determination is substantially supported by the evidence (supra, at 570; see, Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 530). “The arbitrary or capricious test chiefly ‘relates to whether a particular action should have been taken or is justified * * * and whether the administrative action is without foundation in fact.’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974] [citation omitted].) “Arbitrary action is [that which is] without sound basis in reason and is generally taken without regard to the facts” {supra, at 231). “ ‘[T]he proper test is whether there is a rational basis for the *235 administrative orders, the review not being of determinations made after quasi-judicial hearings required by statute or law.’ ” (Supra, at 231, quoting Matter of Colton v Berman, 21 NY2d 322, 329.)
Rule 591.3 of the Public Service Commission recites in part:
“(a) Review of application. Upon receipt of an application for renewal filed pursuant to section 591.2 of this Part, a municipality shall exercise due diligence to review the performance of the applicant under the existing franchise and to ascertain the future needs and expectations of the community relative to cable television service.
“(b) Public hearing on application. No application for renewal of a cable television franchise may be granted unless the municipality shall have first conducted a public hearing to afford all interested parties the opportunity to be heard concerning the renewal. All persons shall be given full opportunity to participate in the hearing and to ask questions of the applicant or any other participant in the hearing, but nothing contained in this subdivision shall limit the power of the presiding officer to establish reasonable time limits and to otherwise limit repetitive statements and questions. The hearing shall be preceded by reasonable notice to the applicant and to the public. The notice of hearing shall conform to all applicable State and local laws and shall indicate that copies of the renewal application are available for public inspection during normal business hours at the office of the clerk of the municipality, whose address shall be stated in the notice.
“(c) Action by local legislative body. (1) Following the public hearing required by subdivision (b) of this section, and such opportunity for further review, including negotiation of a final franchise agreement, as may be found necessary, the local legislative body of the municipality shall decide, in a public session, whether or not to renew the applicant’s franchise. Such public session may be, but not need be, a further public hearing on due notice.
“(2) In the event the franchise is to be renewed, the local legislative body shall adopt a resolution setting forth findings that the applicant and the municipality have negotiated a franchise agreement, agreeable to both parties, which complies with section 595.1 of this Subtitle and otherwise fulfills the needs of the municipality with respect to cable television. Notwithstanding any provision of section 595.1 of this Subtitle to the contrary, the term of such franchise agreement (including the terms of any options to renew exercisable by the *236 franchisee) shall be not more than 10 years from the date the applicant’s previously existing franchise expired; provided, however, that if a renewal is granted more than one year prior to the expiration of the existing franchise, the term of the renewed franchise shall be not more than 11 years from the date the renewal is granted.” (9 NYCRR 591.3 [emphasis supplied].)
Petitioner takes the position that the PSC determination was affected by an error of law and was arbitrary and capricious, in not requiring prior approval by the “local legislative body” (the petitioner).
The PSC observed in its determinations that section 363 of the New York City Charter expressly limited the petitioner’s participation in the franchising process. It noted that under New York City Charter § 363, after an authorizing resolution has been adopted by the City Council, the duty of implementing the authorizing resolution is expressly left to the appropriate executive agency (in this instance DoITT). It commented that rule 591.3 (c) was not intended to define the specific entity that must approve franchise renewals, but rather was designed to afford public notice and an opportunity to be heard in the course of the franchise renewal process. The PSC further observed that New York City was apparently the only municipality in New York State where the legislative body does not approve the award of franchises.[2] Reference was made to Public Service Law § 222 (1) which recites that PSC approval is in addition to any “municipal approval” required under the franchise or by law. It was commented that this language is indicative that there is no statutory mandate requiring “legislative” approval. It was reasoned that rule 591.3 (c) should not be construed to, in effect, override the New York City Charter by requiring the approval of the petitioner, but should rather be construed to include the de facto local approval (in this instance, the approval of DoITT and the FCRC). The PSC also noted that no similar objection had been raised in the past (specifically in 1990) when cable television franchise renewals within New York City had been approved by the City Board of *237 Estimate (the predecessor to FCRC), to the exclusion of the City Council.
New York City Charter § 21 provides that there shall be a Council which shall be the legislative body of the City, vested with legislative power. This section also provides “[a]ny enumeration of powers in this charter shall not be held to limit the legislative power of the council, except as specifically provided in this charter” (NY City Charter § 21). The court cannot ignore the fact that section 3.63 of the New York City Charter, in formulating a fairly comprehensive and detailed process for the approval of franchises, does not provide for formal participation by the City Council beyond the adoption of an authorizing resolution. This, in the court’s view, constitutes a specific limitation on the City Council’s legislative power, particularly when coupled with section 363 (d). The PSC could not, through promulgation of rules and regulations, do anything to, in effect, impose a requirement upon the City which the City was incapable of fulfilling. Thus, a literal interpretation of rule 591.3 (c) as requiring petitioner’s approval would lead to an unreasonable result in direct conflict with the New York City Charter. Under the given circumstances, the court finds the City respondents’ actions rational and in keeping with the New York City Charter. The PSC’s interpretation of the New York City Charter and application of rule 591.3 (c) is found to be, in all respects, rational (see, Council of City of N. Y. v Giuliani, 93 NY2d 60, supra; Matter of Rosen v Assessor of City of Troy, 261 AD2d 9, supra).
In addition, and apart from the foregoing, the court notes that under Public Service Law § 222 (3) “a failure to conform to the standards established in the regulations promulgated by the commission shall not preclude approval of any such application if the commission finds that such approval would serve the public interest.” In this instance, the PSC in each of its determinations has concluded that approval of the franchise agreements would serve the public interest. The court is of the view that, given appropriate findings (discussed infra), this would serve as a separate and additional basis for modifying the requirement of “local legislative approval.”[3]
*238 The court concludes that petitioner’s first and second causes of action must be dismissed.[4]
Public Interest Arguments
As noted, the petitioner, in its third cause of action, makes a number of allegations in support of its contention that the approval of the franchise agreement is not in the public interest. The court will address each of these contentions in turn.
(1) Failure to include adequate reporting and accountability requirements of cable franchises; failure to require adequate oversight for the expenditure of many millions of dollars in funding for cable franchising.
It is argued that the franchise agreements fail to provide satisfactory oversight and accounting with regard to the expenditure of approximately $2,500,000 in public funds contributed to what is known as the Cross-Walks Channels (which consist of five channels to which the City is given access for educational and governmental purposes), and with regard to funds contributed in connection with the construction and use of what is known as the Institutional Network (I-Net). It is asserted that the Giuliani Administration has failed to devise a coherent and long-term plan for expenditure of these monies.
Petitioner does not cite any specific regulatory standard which the franchise agreements allegedly violate. Nor does petitioner proffer any other evidence to document its contentions — that is, to establish the existence of standards with regard to fiscal accountability and oversight which are required to be included in the franchise agreements. Nor does the petitioner adequately indicate how or in what respect such standards may have been breached. In fact, petitioner’s arguments largely distill down to a contention that petitioner’s proposals, as embodied in its amended Authorizing Resolution, are superior to those currently being undertaken by the Giuliani Administration. These arguments, without more, are *239 insufficient to establish either that the PSC determination was irrational or was affected by an error of law.[5]
The court concludes that this portion of petitioner’s third cause of action must be dismissed.
(2) Failure to provide a channel of educational programing.
Petitioner supports its argument that the franchise agreements do not provide adequate educational programming by citing the legislative policy statement contained in Public Service Law § 211. This section recites that the PSC should “assure channel availability for * * * educational television” and “stimulate the development of diverse instructional, educational, community interest and public affairs programming with full access thereto by cable television companies.” Petitioner augments its argument by indicating that one of the five “Cross-Walks” channels allocated for government access is currently being used to broadcast horse racing. Petitioner does not cite any specific regulation in support of its contention. The City respondents maintain that the policy statement supportive of educational programming is fulfilled by an educational channel owned and operated by the New York City Board of Education, known as WYNE.
Again, in the court’s view, in the absence of any specific regulatory (or other) standard with regard to educational programming, petitioner has failed in its burden to establish that the determination was irrational or affected by an error of law. The court concludes that this portion of petitioner’s third cause of action must be dismissed.
(3) Rule 595.4 (c) (2).
Turning to petitioner’s public interest arguments, PSC rule 595.4 (c) (2) recites as follows: “The educational and governmental access channel shall be operated and administered by a committee or a commission appointed by local government and shall include appropriate representation of local school districts within the service area of the cable television system and may include for purposes of coordination an employee or representative of the cable television franchisee.” (9 NYCRR 595.4 [c] [2].)
Petitioner maintains that the PSC approval is irrational and affected by an error of law in that the agreements do not *240 provide for operation and administration of the educational channel and governmental channels by committee or a commission. Petitioner points out that the PSC failed to address rule 595.4 (c) (2) at all in its decision. The City respondents take the position that the requirement has been adequately satisfied by a channel under the control of the Trustees of the City University of New York.
The only findings remotely relevant to this issue are the following: “The renewal franchises exceed what is required by our franchise standards contained in Part 595 of our Rules. [The proposed franchisee] has expended significant resources to ensure that the systems are built with the most advanced, state-of-the-art technology, and it has promised continued investment toward that end. It is required to provide on-going universal service throughout its franchise territory. It has also designated significant resources to support public, educational, and government (PEG) access and an institutional network.” (PSC determinations issued July 15, 1999 [Time Warner determination, at 14; Cablevision determination, at 14.)
In the court’s view, these conclusory findings are too vague to provide a rational basis for the PSC’s determination (see, Matter of Merritt v Ithaca City School Dist., 254 AD2d 591, 592 [3d Dept 1998]). Moreover, “[a]lthough respondent provided more specific information through affidavits in support of its answer to the petition, that attempt to augment the grounds relied upon * * * fails inasmuch as the record is not sufficiently detailed to enable [the court] to clearly conclude that respondent, in fact, relied upon all [or any specific portion] of this additional information at the time of the [respective] initial [determinations]” (supra, at 592). The court concludes that the determinations must be vacated and annulled, and remitted to the respondent PSC for purposes of making detailed findings with regard to rule 595.4 (c) (2) (see, Matter of Furch v Bucci, 245 AD2d 749, 751-752 [3d Dept 1997], lv dismissed 91 NY2d 953).[6]
*241 Accordingly it is ordered and adjudged that the petition is dismissed as it relates to petitioner’s first and second causes of action, and that portion of petitioner’s third cause of action other than which pertains to allegations of noncompliance with PSC rule 595.4 (c) (2); and it is further ordered and adjudged that the petition is granted with respect to that portion of petitioner’s third cause of action alleging noncompliance with PSC rule 595.4 (c) (2); and it is further ordered and adjudged that the PSC determinations issued July 15, 1999 are vacated and annulled; and it is further ordered and adjudged that the matter is remitted to the Public Service Commission for further findings in keeping with this decision.

. Time Warner’s franchises include northern Manhattan, southern Manhattan, western Brooklyn, southern Queens, eastern Queens, western Queens and Staten Island. Cablevision’s franchises include eastern Brooklyn and the Bronx.

. The PSC decisions indicate that the drafters of rule 591.3 (c), in making reference to “local legislative body” were cognizant that the Town Law, Village Law, General City Law and Second Class Cities Law all require that franchises be granted by the town board, village board of trustees, or the common council of the city, respectively (see, Town Law § 64 [7]; Village Law §4-412 [3] [6]; General City Law §20 [10]; §23 [2] [b]; Second Class Cities Law § 37).

. The court is mindful that judicial review of an agency determination is limited to the grounds invoked by the administrative body (see, Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 678 [1997]; Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 11 NY2d 753, 758). In this instance, each of the PSC determinations discussed Public Ser *238 vice Law § 222 (3) under the heading entitled “Background.” They made a thorough analysis of the approval process, including the need for City Council approval, and made a finding that approval of the franchises was in the public interest. The court does not agree that the PSC is now relying upon a ground not invoked in its original determinations.

. In an attempt to correct the deficiencies of the original authorizing resolution, the petitioner, on August 17, 1998, adopted a resolution amending the October 13, 1993 authorizing resolution. This was vetoed by the Mayor on October 12, 1998. On November 17, 1998 petitioner voted to override the Mayor’s veto. By that time, however, the five-year authorizing resolution had expired, and the subject cable franchise agreements had been approved and executed by the City respondents.

. Apart from the foregoing, the court notes that each decision expressly provides for supervision of the expenditure of I-Net funds and submission of annual audited financial statements for Community Access Organizational funds.

. The court notes that the cable franchise agreements indicate that the governmental channels shall be placed under the jurisdiction of the Mayor. The term “Mayor” is defined as the chief executive officer of the City. Included within the definition of Mayor is the Mayor’s designee. The agreements contain a provision which indicates that terms used in the plural shall include the singular, and vice versa, unless the context otherwise requires. In the court’s view, the franchise agreements do not appear to be in any manner overtly violative of rule 595.4 (c) (2) (which, incidentally, does not otherwise define the term “local government”) in that there is nothing within *241 the agreements which precludes full implementation of said rule. Nor is there any requirement within the regulations that the franchise agreements must identify the committee or commission so appointed. Nonetheless, in the absence of findings or any other indications in the record, the court is unable to determine what information the PSC relied upon in making its determinations.